THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SWINKA REALTY INVESTMENTS, LLC :
:
    Plaintiff :
v. : 3:13-CV-764
: (JUDGE MARIANI)
LACKAWANNA COUNTY TAX CLAIM :
BUREAU and LACKAWANNA COUNTY :
:
    Defendants :

## MEMORANDUM OPINION

### I. Introduction

Before the Court are Defendants' Partial Motion to Dismiss (Doc. 3) and Plaintiff's Motion to Bifurcate Count IV from the Complaint (Doc. 14). For the reasons set forth below, the Court will grant Defendants' motion, deny Plaintiff's motion, and will grant Plaintiff leave to file an Amended Complaint.

### II. Factual Allegations

Plaintiff, Swinka Realty Investments, LLC, "properly registered to be an authorized bidder at the September 20, 2010 Upset Tax Sale conducted by the Defendant, Lackawanna County Tax Claim Bureau." (Complaint, Doc. 1, at ¶¶ 1, 5). At the Upset Tax Sale, Plaintiff was the only bidder on a property located at "905 Woodmere Avenue, Dickson City, Pennsylvania and referenced under Lackawanna County Tax Parcel Number 11405-030-013," and successfully bid on it for $541.16. (*Id.* at ¶¶ 7-9). That day, Plaintiff's agent

tendered a money order for $541.16 to Defendants, who accepted it (*Id.* at ¶¶ 10, 13, 22; see also Ex. A).

By the close of business on September 20, 2010, the owners of the property, John and Elizabeth Fennell, had not redeemed the property by paying off the outstanding tax lien. (*Id.* at ¶¶ 11, 18, 21). In addition, "[n]o party filed any objections or exceptions to the Upset Tax Sale relative to the Lackawanna County Tax Claim Bureau's offering of the Property for sale, or for Swinka's purchase at the Upset Tax Sale." (*Id.* at ¶ 35).

However, the next day, "an unknown female representative of Lackawanna County and the Lackawanna County Tax Claim Bureau contacted a representative of Swinka and advised him that the 'taxes were paid' on the Property, and that Lackawanna County and the Lackawanna County Tax Claim Bureau were going to refund Swinka's money." (*Id.* at ¶ 37). The agent further represented "to the agent for Swinka that the taxes were timely paid by the owners, John J. Fennell and Elizabeth M. Fennell." (*Id.* at ¶ 38). When pressed by Swinka's agent as to the timeliness of the owners' payment, Defendants' representative responded, she "did not know" when the taxes had been paid. (*Id.* at ¶¶ 39-40).

Upon investigation of the matter on November 19, 2010, Plaintiff obtained a copy of a tax claim receipt for the Property. (*Id.* at ¶ 42; see also Ex. C). The receipt indicated that the taxes had been paid by "Joanne Huddy" on October 24, 2010, several weeks after the Upset Tax Sale took place on September 20, 2010. (*Id.* at ¶¶ 42-44). The Lackawanna County Assessor's database indicates that Joanne Huddy "purchased the Property by deed

on October 8, 2010, through a Deed filed in Lackawanna County's Office of the Recorder of Deeds under Reference Number 201020207." (*Id.* at ¶ 55; *see also* Ex. E).

Despite Plaintiff's tender of payment, Defendants did not "tender the deed to Swinka in due course," and "failed to present Swinka's purchase of the Property to the Court [of Common Pleas] for confirmation." (*Id.* at ¶¶ 21, 27). In addition, Defendants did not refund Plaintiff's money until February 15, 2011, long after notifying Plaintiff they would refund the purchase price. (*Id.* at ¶ 29).

Plaintiff then filed suit against Defendants and asserted four counts: (1) breach of contract, (2) action in mandamus, (3) due process and equal protection violations, and (4) a request for the appointment of a board of viewers under Section 502 of the Eminent Domain Code. Defendants then filed the pending Partial Motion to Dismiss (Doc. 3), arguing that Plaintiff (1) failed to state a proper *Monell* claim and (2) failed to allege sufficient facts in support of a Substantive Due Process claim. Plaintiff subsequently filed a Motion to Birfurcate Count IV from the Complaint. (Doc. 14).

### III. Motion to Dismiss

To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a plaintiff must state a "'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)). FED. R. CIV. P. 8(a)(2) requires only that a pleading contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

3

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)).

"The court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). In addition, "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *In re New Jersey Title Ins. Litigation*, 683 F.3d 451, 462 (3d Cir. 2012). "The Rule 15(a) factors include undue delay, bad faith, prejudice, or futility." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230-31 (3d Cir. 2011) (internal citation and quotation marks omitted).

## IV. Analysis

<u>Count III: Due Process and Equal Protection Claims</u>

To establish a *prima facie* case under 42 U.S.C. § 1983, plaintiffs must demonstrate that: (1) they were deprived of a federal right; and (2) the person who deprived them of that right acted under color of state law. *Burrella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007). Section 1983 is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004). Plaintiff is bringing claims pursuant to the Due Process and Equal Protections Clauses of the Constitution.

"[M]unicipalities and other local government units [are] included among those persons to whom § 1983 applies." *Monell v. Dep't of Social Servcs. of City of New York*, 436

4

U.S. 658, 690 (1978). However, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In addition to showing the existence of an official policy or custom, plaintiff must prove "that the municipal practice was the proximate cause of the injuries suffered." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id.* "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." *Id.* at 851. "A sufficiently close causal link between . . . a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." *Id.*

Plaintiff is suing the Lackawanna County Tax Claim Bureau and Lackawanna County. However, nowhere in the Complaint does Plaintiff allege that the deprivation of property it allegedly suffered was a result of Defendants' illegal customs or policies. Instead, Plaintiff alleges that Defendants' agent(s) "intentionally lied to Swinka and its agent in an egregious, illegal, and shocking attempt to avoid having to tender a deed to Swinka, the

successful purchaser." (Compl. at ¶ 48). Defendants' agents merely accepted payment, informed Plaintiff that the taxes had been paid by the owner, and eventually, refunded Plaintiff's payment. (*Id.* at ¶¶ 22, 29, 37-40). Because of the refund, Defendants never received court approval of the Upset Tax Sale, and Plaintiff never received the Deed to the Property. (*Id.* at ¶¶ 21, 27). Nowhere in these allegations is there any mention that Defendants' agents acted pursuant to a policy or custom of Lackawanna County that led to the deprivation of Plaintiff's property rights. In fact, Plaintiff does not respond to this argument in its Brief in Opposition, as Defendants point out in their Reply Brief. (Doc. 11, at 1). For this reason, the Court will grant Defendants' partial motion to dismiss, but will grant Plaintiff leave to amend to plead that Defendants established a custom or policy that led to the deprivation of its rights.

i. Procedural Due Process

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (internal citations and quotation marks omitted). "It is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006).

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). "State law does not define the parameters of due process for the purposes of the Fourteenth Amendment. Rather, federal law defines those parameters." *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 195 (3d Cir. 2009) (internal citations omitted).

It is beyond dispute that under Pennsylvania state law, an owner of real property has a protected property interest. Plaintiff alleges in Count III that:

> 87. The Defendants had no opportunity for a hearing, meeting, or court action as the Defendants took action under the color of state law without following the constitutionally mandated, state-mandated and County-mandated procedures regarding the sale and transfer of Property.
>
> 88. Swinka took action to remedy the matter by forwarding correspondence to the Defendants that went unanswered. (See Exhibit "D").

(Compl. at ¶¶ 87-88).

Because Plaintiff has not pled a proper *Monell* claim and Defendants have not argued any defects in pleading in Plaintiff's procedural due process claim, the Court will defer ruling on the viability of this claim on the merits of the allegations.

### ii. Substantive Due Process

7

Plaintiff brings its substantive due process claim under the Fourteenth Amendment via § 1983 against all Defendants. Thus, the Court must determine whether "the behavior of a governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *United Artists Theater Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 402 (3d Cir. 2003) (abandoning the less stringent "improper motive" test in light of the Supreme Court's holding in *Lewis*). A defendant's "actions or inactions" may give rise to conduct that shocks the conscience. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). The "shocks the conscience" standard is "designed to avoid converting federal courts into super zoning tribunals." *Id.* "While the meaning of the standard varies depending upon factual context, merely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision." *Chainey v. Street*, 523 F.3d 200, 220 (3d Cir. 2008). The *Chainey* court stated that in *Eichenlaub*, "in affirming the trial court's finding that the alleged conduct did not shock the conscience, we noted there were no allegations of corruption, self-dealing, bias against an ethnic group, or additional facts that suggested conscience-shocking behavior." *Id.* Thus, a "bad-faith violation of state law remains only a violation of state law," and is "is insufficient to state a substantive due process claim." *United Artists*, 316 F.3d at 402.

Defendants argue that, even accepting all of Plaintiff's factual allegations as true, none of the actions or inactions allegedly taken by Defendants amounts to conscience-

8

shocking behavior. The Court is inclined to agree as the Complaint currently stands; it is clear that Plaintiff must allege facts showing more than an improper motive behind Defendants' alleged actions in failing to produce a Deed and in setting aside the Upset Tax Sale. The following paragraphs contain the entirety of Plaintiff's substantive due process claim:

> 83. The Defendants, in an egregious manner and in a manner that shocks the conscience, took Swinka's money and held it for six months. (See Exhibits "A" and "B").
>
> 84. The Defendants, acting under the color of state law, took action to lie and misrepresent the status of the taxes to Swinka's agent with the sole purpose and intent of depriving Swinka of the Property which it had purchased, knowing full well, at all times relevant hereto, that the taxes had not been paid. (See Exhibit "C").
>
> 85. The Defendants had a legal obligation and duty to merely tender the deed after payment was made.
>
> 86. The Defendants not only took the Property from Swinka, but they illegally, willfully and shockingly withheld Swinka's money for six (6) months without any justification to do so.
>
> . . .
>
> 89. The Defendants' actions completely lack any rational basis and completely shock the conscience.
>
> 90. The lies and misrepresentations to Swinka represent the worst and most egregious official conduct, and Swinka has sustained substantial damages as a result of the same.
>
> 91. The Defendants' actions rise far above any improper motive that could have been represented.

(Compl. at ¶¶ 83-86, 89-91). As yet, there are no allegations of corruption, self-dealing, or anything amounting to conscience-shocking behavior. Nevertheless, accepting Plaintiff's allegations as true, there is a possibility that with further development of the Complaint, Plaintiff could establish a substantive due process claim.

Thus, the Court will dismiss the Substantive Due Process claim without prejudice and grant Plaintiff leave to amend.

### iii. Equal Protection

Plaintiff argues that Defendants have burdened its fundamental right to property while not doing the same to other similarly-situated persons. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. "If state action does not burden a fundamental Constitutional right or target a suspect class, the challenged classification must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Doe v. Pennsylvania Bd. of Prob. & Parole*, 513 F.3d 95, 107 (3d Cir. 2008) (internal citations and quotation marks omitted). "If the challenged state action involves a "suspect" classification based on race, alienage or national origin, or infringes on a fundamental constitutional right, we must apply the strict scrutiny standard." *Id.* "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (internal citations and quotation marks omitted).

The allegations that Plaintiff raises in the Complaint as to its Equal Protection are:

92. Moreover, the Defendants treated Swinka different than any other Upset Tax Sale purchaser by refunding their money after six (6) months and preventing them from receiving title to the Property as required under law.

93. The Defendants did not lie and misrepresent the payment of taxes for Properties to any other Upset Tax Sale purchaser.

(Compl. at ¶¶ 92-93).

Because Plaintiff has not pled a proper *Monell* claim and Defendants have not argued any defects in pleading in Plaintiff's Equal Protection claim, the Court will defer ruling on the viability of this claim on the merits of the allegations.[1]

<u>Bifurcation of Count IV: Appointment of Board of Viewers under 26 PA. CONS. STAT. § 502, 504 ("Eminent Domain Code")</u>

In support of its motion, Plaintiff argues that "there have been no objections filed to the Petition for the Appointment of the Board of Viewers within thirty (30) days as required by the Pennsylvania Eminent Domain Code." (Pl.'s Br. in Supp., Doc. 15, at 3). Section 504 of the Code provides: "[a]ny objection to the appointment of viewers may be raised by preliminary objections filed within 30 days after receipt of notice of the appointment of viewers." 26 PA. CONS. STAT. § 504(d)(1). Because Defendants did not raise any preliminary objections to Plaintiff's petition, according to Plaintiff, "liability is firmly established as it relates to an inverse condemnation in this matter." (Doc. 15, at 3). Plaintiff's procedural argument is misplaced.

---

[1] Plaintiff avers in its Complaint that "[t]here was no rational basis for the actions of the Defendants against Swinka," purportedly setting forth its belief that rational basis scrutiny applies. (*Id.* at ¶ 94; see also ¶ 89).

11

Although Plaintiff originally filed suit in state court, "federal procedural rules govern a case that has been removed to federal court." *Smith v. Bayer Corp.*, -- U.S. --, 131 S. Ct. 2368, 2374, n.2, 180 L. Ed. 2d 341 (2011); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 437-38, 94 S. Ct. 1113, 1123, 39 L. Ed. 2d 435 (1974) ("once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal. . . . The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal."); *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 454, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943) ("Congress has directed the District Court after a case has been removed to proceed therein as if the suit had been originally commenced in said district court."); *see also* FED. R. CIV. P. 81(c)(1) ("[t]hese rules apply to a civil action after it is removed from a state court."); *Smith v. Steckman Ridge, LP*, No. 3:09-268, 2010 WL 3905071, at *4 (W.D. Pa. Sept. 29, 2010) (declining to appoint the plaintiffs' petition to appoint viewers despite the defendant's failure to file a timely preliminary objection under Pennsylvania law because the Federal Rules of Civil Procedure applied to the case after it was removed to federal court). Thus, Plaintiff is not entitled to bifurcate Count IV from the rest of the Complaint.

Aside from the issue of whether state or federal rules govern this claim, the Court finds that Plaintiff has failed to plead a valid cause of action under the Eminent Domain Code. Plaintiff is petitioning for the appointment of viewers under Section 502 of the

Eminent Domain Code. That section provides in relevant part: "[a] condemnor, condemnee or displaced person may file a petition requesting the appointment of viewers, . . ." 26 PA. CONS. STAT. § 502(a).

However, under Section 102(a), the Code "provides a complete and exclusive procedure and law to govern all *condemnations of property for public purposes* and the assessment of damages." *Id.* § 102 (emphasis added). "Eminent domain" is defined as "[t]he power of the Commonwealth to take private property for public use in return for just compensation." *Id.* § 202.

The Code defines a "condemnor" as "[t]he acquiring agency, including the Commonwealth, that takes, injures or destroys property by authority of law for a public purpose," and defines a "condemnee" as "[t]he owner of a property interest taken, injured or destroyed. The term does not include a mortgagee, judgment creditor or other lienholder." *Id.* § 103. Furthermore, a "displaced person" is defined as "[a] condemnee or other person that moves from real property or moves personal property from real property: (A) as a direct result of a written notice of intent to acquire or the acquisition of the real property, in whole or in part, for a program or project undertaken by an acquiring agency;" or "(ii) [a] person that was in occupancy of the real property on or before the date of acquisition, notwithstanding the termination or expiration of a lease entered into before or after the event giving rise to the displacement." *Id.*

13

Clearly, under the statute, Plaintiff is neither a condemnee nor a displaced person, Defendants are not condemnors, and there was no condemnation of property for public purposes in this case.

"Generally, a district court may *sua sponte* dismiss a complaint under Rule 12(b)(6) after service of process only if the plaintiff is afforded an opportunity to respond." *Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007) (citing *Oatess v. Sobolevitch*, 914 F.2d 428, 430 n. 5 (3d Cir.1990)). "However, although disfavored, a *sua sponte* dismissal may stand even if the plaintiff is not provided notice and an opportunity to respond where it is clear that the plaintiff cannot prevail and that any amendment would be futile." *Id.* (citing *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002)).

Because there has been no taking by the Commonwealth for a public purpose, the Court will dismiss Count IV without prejudice, but out of an abundance of caution, it will grant Plaintiff leave to amend to plead that an inverse condemnation occurred.

## V. Conclusion

For the foregoing reasons, the Court will grant Defendants' partial motion and dismiss Count III without prejudice, deny Plaintiff's motion and dismiss Count IV without prejudice, and grant Plaintiff leave to file an Amended Complaint. A separate Order follows.

Robert D. Mariani
United States District Judge